## State of Vermont v. Jano Jost

[ 241 A.2d 316·]

February Term, 1968

Present: Holden, C.J., Barney, Smith and Keyser, JJ.

Opinion Filed April 2, 1968

*Louis P. Peck,* Assistant Attorney General, for the State.

*Eric A. Schuppin,* Esq., and *M. Martin Leinwohl,* Esq., on the brief and oral argument.

**Holden, C.J.** The respondent was convicted on two counts of the criminal offense of false advertising. The subject of the prosecution is an advertisement which was published in the Boston Globe and circulated in Hyde Park, Vermont on July 24th and July 31st, 1966.

The text of the advertising material, which the State alleges was untrue, deceptive and misleading, appeared in the Globe's Sunday editions on the days in question in this print:

### HYPAC
### HYDE PARK COLLEGE

HAVE BOTH: EDUCATION & VACATION in inspiring mountain land of Stowe, Vermont with its numerous recreation facilities! A new Liberal Arts, non-profit co-ed college with 2 and 4 year programs granting Associate and Bachelor degrees. Small tutoring classes for under-achievers. NATIVE teachers in French, German, Russian, and Spanish. Visits of World Exhibition in Montreal, Canada. Excellent European professors, e. g. in Fine Arts (and for Ballet) with Royal Prizes from the Queen of the Netherlands, Prof. Ligthart, MA, State Academy of Amsterdam; Physical educ.; European fencing master Dr. Andrew VonBorros, University of Budapest, famous German-Canadian scientist, philosopher, psychologist, and poet, Prof. Jano Jost with 4 doctorates and ca. 1200 credits from German, Swiss, Canadian and American universities.—Healthy and tasty European food. Our principle:

WE DON'T LET DOWN ANYBODY! Still some places available for Fall 1966. Write: Dir. of Admissions, Box C-1, Stowe, Vermont.

The respondent elected to stand trial by the court without a jury and the waiver was announced in open court, as provided in our constitution. Vt.Const. Ch. I, Art. 10. He brings this appeal from the findings and judgment of guilty, entered by the Lamoille County Court.

We are met at the threshold with a question of the lower court's jurisdiction. The challenge is based on the claim that the respondent committed no act in Vermont which would give our courts authority to punish him for the offenses charged. The respondent testified he wrote the advertising material in LaPrairie and mailed it to the newspaper publisher in Boston from Montreal. Both LaPrairie and Montreal are in the Province of Quebec. Although the lower court reported it was not satisfied that such was the fact and declined to so find, there was no evidence from the State to oppose the respondent's claim about it. So the charge that the respondent made and published the advertisement in Vermont has no support in the evidence or the findings.

However, both counts of the information further allege that the respondent circulated and caused the untruthful advertising to be placed before the public at Hyde Park, Vermont on the days specified. 13 V.S.A. §2005 provides:

A person, firm, corporation or association, or an agent or employee thereof, who, with intent to sell or dispose of merchandise, real estate, securities or service or to induce the public to enter into any obligations relating thereto, shall knowingly make, publish, circulate or place before the public, in a newspaper, magazine or other publication or in form of a book, notice, circular, pamphlet, letter, handbill or tag, an advertisement or statement regarding merchandise, real estate, securities or service, which advertisement or statement shall contain anything untrue, deceptive or misleading, shall be fined not more than $1,000.00.

The findings confirm that copies of the Boston Globe, published in Boston on the dates alleged, were sold and distributed at Hyde Park, Vermont. The respondent raises no question about this and concedes that he wrote and mailed the notice to the publisher. The question, then, is whether the court had jurisdiction to prosecute the respondent

on the complaint that he circulated and publicized false advertising here.

■■ To establish criminal responsibility, it is not necessary that the offender do every act necessary to complete the crime within the state where he is prosecuted. *Strassheim* v. *Dailey,* 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed 735, 738. The principle is well settled in the criminal law that one, while absent from the jurisdiction, commits an offense within the state by means of an innocent agency, may be held liable in that state if that is where the crime is accomplished. *Adams* v. *People,* 1 N.Y. 173; *Rex* v. *Brisae,* 4 East 164, 8 Eng.Rul. Cas. 138, 144. See also *State* v. *Marshall,* 77 Vt. 262, 270, 59 A. 916 and annotation 42 A.L.R. 275.

This jurisdiction concept applies in the law of criminal libel. In the absence of statutory provision to the contrary, it is the general rule that a criminal prosecution for libel may be instituted in any jurisdiction where the libelous article was published or circulated, even though the subject was written or printed elsewhere. *State* v. *Piver,* 74 Wash. 96, 132 P. 858, 49 L.R.A.,N.S., 941, 945; 33 Am.Jur., Libel and Slander §322.

■ The principle has equivalent and appropriate application in the instant case. We hold the Lamoille County Court had jurisdiction to entertain the present prosecution for circulating false advertising at Hyde Park, although the material may have been written and printed elsewhere.

■■ The respondent's contention that the statute imposes an unconstitutional burden on interstate commerce is without substance. A statute relating to advertising, that is addressed to a proper and traditional subject of the police power does not violate the commerce clause when not in conflict with the federal scheme. *Head* v. *New Mexico Board of Examiners in Optometry* (1963), 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983, 987-989. See also 3 Am.Jur. 2d, Advertising §5.

■■ The purpose of the statute in question is to protect the general public who is likely to read the publication. It forbids, as an inducement to business transaction, the circulation of untrue, deceptive or misleading representations of fact concerning goods and services offered for sale. *Commonwealth of Mass.* v. *Reilly,* 248 Mass. 1, 142

N.E. 915, 918. To offend the statute it is not necessary that any person be cheated or defrauded by the false statement, but only that the material was false and intentionally circulated to induce the public to buy the property or service offered. *People* v. *Glubo,* 5 N.Y.2d 461, 186 N.Y.S.2d 26, 158 N.E.2d 699, 705; 32 Am.Jur.2d, False Pretenses §88.

The issues as to the merits were narrowed during the course of the trial. The court pointed out to counsel that they should keep in mind that there were only two issues presented for its determination— "one, did the corporation of Hyde Park College have authority to grant associate and bachelor degrees; and two, does the respondent have four doctorates. As the Court understands it, those are the two issues to be determined." Except for saving the jurisdictional question just considered, counsel for the respondent, and the State as well, accepted this statement of the issues.

The court's pronouncement of the respondent's guilt, set forth in Finding 26, is considerably broader in scope.

(26) The Court is satisfied by the required measure of proof, i.e., beyond a reasonable doubt, that the respondent knowingly and with intent to sell a service, that is, education at the college level, and with the intent to induce the public to enter into obligations relating thereto by the enrolling of students at Hyde Park College, Inc., did compose and cause to be published an advertisement stating that Hyde Park College, Inc., was a "co-ed college with 2 and 4 year programs granting Associate and Bachelor degrees"; further, that he, "a famous German-Canadian scientist, philosopher and poet, Prof. Dr. Jano Jost, possessed four doctorates"—that Hyde Park College, Inc., possessed an adequate faculty and the necessary facilities to operate and conduct two and four year college programs, which he knew was untrue, deceptive, insidious and misleading, and that by such advertisement respondent intended to deceive, delude and beguile that public interested in institutions described by the advertisement in question.

It is the duty of the trier to sift the evidence and affirmatively state the facts. *Thompson* v. *Smith,* 119 Vt. 488, 496, 129 A.2d 638; *Hammonds, Inc.* v. *Flanders,* 109 Vt. 78, 81, 191 A. 925. The question before us is whether the subordinate findings are sufficient in law to sustain the court's conclusion as to the respondent's guilt of the offenses

alleged in the information. *McKinney* v. *Kelley,* 120 Vt. 299, 307, 141 A.2d 660.

The false statements charged against the respondent in the complaint are that Hyde Park College "does not have the authority to grant associate and bachelor degrees and the said Jano Jost does not have four doctorates, as represented by said advertisement, and that the entire content of the advertisement is constructed so as to mislead the general public with respect to the buildings, staff, faculty and curriculum of said college."

The articles of association filed by the respondent, his wife and mother, state the purpose of the corporation to be the establishment and operation of an "institution of learning of collegiate level,—both two and four year courses leading to associate and bachelor degrees upon proper qualification and approval of the State Board of Education—."

The respondent testified that it was his intention, when he wrote the advertisement, to offer two and four year programs and confer degrees when the college was granted that power by the state board of education. The education law provides that before articles of association of a corporation seeking authority to confer degrees are transmitted to the secretary of state, the incorporators shall petition the state board of education for a certificate approving the educational and financial standing of such corporation. 16 V.S.A. §148. No petition was filed. Despite this shortage, the secretary of state received and recorded the articles as submitted.

Concerning this aspect of the case, the trial court found:

(13) The Court is satisfied beyond a reasonable doubt and so finds as a fact, that the intent and purpose of the respondent when he composed the advertisement in question and caused it to be published was to lead interested parties to understand and believe that Hyde Park College, Inc., had, as of the date of the advertisement, authority and was prepared to award and grant associate and bachelor degrees upon the successful completion of the college's prescribed 2 and 4 year programs. A reading of the advertisement does not lend itself to any other sensible interpretation.

(14) The fundamental purpose of a college is to confer degrees upon the successful completion of a prescribed course of study. The advertisement in question unequivocally states that Hyde Park

College, Inc., supplied 2 and 4 year programs granting associate and bachelor degrees. To find, as respondent claims, that the advertisement is intended only to advertise curricula of 2 and 4 years would, it seems to the Court, requires a distorted interpretation of the advertisement.

 False representations and broken promises, referring merely to the future do not constitute ground for establishing legal liability for fraud and deceit. *Girard* v. *Jerry,* 95 Vt. 129, 131, 113 A. 533; *Hunt* v. *Lewis,* 87 Vt. 528, 531, 90 A. 578. But where the language of the representation is susceptible of a construction which makes the statement applicable to present conditions, the interpretation of the representation is for the trier of the facts. *Potter* v. *Crawford,* 106 Vt. 517, 520, 175 A. 229. See also *Comstock* v. *Shannon,* 116 Vt. 245, 250, 73 A.2d 111.

 The same principle applies here. The trial court was justified in finding that the respondent's use of the word "granting" referred to authority existing at the time applicants for admission were solicited in the advertisement. In this context the advertising was false, deceptive and misleading within the prohibition of the statute.

But the record demonstrates that the adjudication of guilt was not based on this finding alone. We are called upon to review other findings where prejudicial error is assigned.

The trial court reports that the respondent claimed and testified he had received four doctorate degrees. This was confirmed by testimony of his mother that her son had received four degrees from the University of Leipzig in Philosophy, Law and Economics, but the record of her son's educational achievements were confiscated during the Hitler regime. In this connection, the respondent testified he returned to the University after the war to obtain replacement certification of these degrees, but the records of the University had been confiscated or destroyed by bombing.

On June 20, 1962, when the respondent applied for admission to McGill University, in response to a question entitled "Degrees" the respondent inserted the word "Doctorand." The court further found the word "doctorand" appears to apply to a person or individual who has undertaken graduate study for a doctorate. The same answer was given when the respondent applied for a teaching position at Johnson Teachers College at Johnson, Vermont. No specific advance degrees

were claimed in either application. The court resolved the issue in Finding 22 as amended:

(22) The Court is not satisfied that the respondent was ever granted or that there was ever conferred upon him by any college, university or institution of learning authorized to confer legal degrees, the four degrees he claims to now possess. In fact, the Court entertains grave doubts that a degree of any nature was ever conferred upon the respondent by any educational institution in any land having a lawful right to confer educational degrees.

██ The subordinate findings bearing on this issue relate only to prior inconsistent statements made in employment application submitted by the respondent to McGill University and Johnson Teachers College. While such statements are competent evidence in corroboration of the testimony of other witnesses, they are insufficient to support a criminal conviction of perjury. *State* v. *Wolley,* 109 Vt. 53, 62, 192 A. 1. The reason for the rule applies with equal force to any prosecution based on a false statement. The falsity of the advertising is not proved by the inconsistency of other statements, for the omission in the latter may have been in error or perhaps untrue.

██ The State correctly contends that in the posture of this appeal, the evidence must be reviewed in its most favorable light to support the result reached by the trial court. *State* v. *Perras,* 117 Vt. 163, 164, 86 A.2d 544; *State* v. *Wolley, supra,* 109 Vt. at 63, 192 A. 1. We are mindful, too, that the credibility of witnesses is the province of the trier to determine whether the cause is tried by the jury or by the court alone. *State* v. *Bissell,* 106 Vt. 80, 90, 170 A. 102; *Crawford* v. *Lumbermen's Mutual Casualty Co.,* 126 Vt. 12, 17, 220 A.2d 480. But that is not to say that the State's case in a criminal prosecution can be founded on the want of credibility on the part of the accused. To the contrary, the State must present affirmative and substantial evidence of the respondent's guilt. *State* v. *Coburn* 122 Vt. 102, 109, 165 A.2d 349. And if there is a shortage in the State's evidence in this regard, the deficiency is not supplied by prior statements which might be construed as inconsistent with innocence. *State* v. *Boudreau,* 111 Vt. 351, 363, 16 A.2d 262.

██ In this state of the evidence, the respondent was not called upon to satisfy the court of the truth of his advertisement. Until the

State established its falsity by sufficient evidence to sustain a conviction, the respondent had no burden on this issue. Compare *State* v. *Coburn, supra*, 122 Vt. at 109, 165 A.2d 349. The language of the findings indicate the court relieved the State of this responsibility and was persuaded by its dissatisfaction in the respondent's credibility.

There are other findings in the same attitude concerning the college facilities and faculty. Moreover, as to these facts, the court miscasts the burden of proof. Insofar as these findings depart from the theory on which the case was tried as announced by the court, they afford no support to the conviction. *State* v. *Coomer*, 105 Vt. 175, 178, 163 A. 585, 94 A.L.R. 1038.

Lastly, the respondent assigns error to Findings 29 and 30:

(29) After observing the respondent during a two day hearing and listening to him testify, the Court is compelled to the conclusion that the youth of the country should not be exposed to his philosophies, his teachings or his influence.

The conclusion, which the court derived from its observation of the respondent during the trial, makes an issue of the respondent's character, his philosophies and teachings. Character is never an issue in criminal proceedings unless and until the accused makes it so at the trial. Until the defense opens the door, the issue is foreclosed. *State* v. *Garceau*, 122 Vt. 303, 306, 170 A.2d 623; *State* v. *Hedding*, 114 Vt. 212, 215, 42 A.2d 438; 1 Wigmore, Evidence §57 (3d Ed.); 29 Am.Jur.2d, Evidence §§340-341; 32 C.J.S. Evidence §676.

The respondent's philosophies, teachings and corrupting influence are foreign to the offense charged in the complaint. These considerations afford no proper basis for the conviction.

The findings conclude with a summary, stated in Finding 30:

(30) This kind, type and nature of false, inaccurate, deceitful, fabricated and misleading advertising can prove harmful, injurious and damaging to a community and the State and should be discouraged and prevented whenever possible.

This aspect of the court's decision bears witness that the court became disturbed at what it saw and heard at the trial. Such is sometimes the case in criminal trials. Nonetheless, procedural safeguards must be scrupulously observed. "A criminal, however shocking his crime, is not to answer for it, with forfeiture of life and liberty, till

130

tried and convicted in conformity with law." *People* v. *Moran*, 246 N.Y. 100, 158 N.E. 35, 37. Judge Cardozo's reminder in a serious felony appeal applies with equal force to the misdemeanors in the case before us. Accordingly, the conviction must be reversed and a new trial ordered.

*Judgment vacated and cause remanded.*