## State of Vermont v. Phillip J. Doyen

[676 A.2d 345]

No. 94-627

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 15, 1996

*Jeffrey L. Amestoy,* Attorney General, and *Susan R. Harritt,* Assistant Attorney General, Montpelier, for Plaintiff-Appellant.

*Robert M. Paolini* of *Martin & Paolini,* Barre, for Defendant-Appellee.

**Johnson, J.** In this case, we decide whether Vermont has jurisdiction to prosecute the offense of custodial interference, 13 V.S.A. § 2451, where the defendant commits no act within Vermont. The trial court dismissed the charge against defendant, reasoning that the alleged conduct took place in New Hampshire, Hawaii, and other states, but not in Vermont. The State contends that where the child and the child's lawful custodian are residents of Vermont, Vermont retains jurisdiction to prosecute the offense, regardless of where the child is held or kept by defendant. We reverse the trial court's dismissal and reinstate the charge against defendant.

## I.

The parties stipulated to the following facts. Defendant exercised his visitation rights under a court order and, with the permission of the custodial parent, obtained custody of his daughter in Vermont on June 30, 1994. The visitation period ended on July 17, 1994, but defendant failed to return his daughter to her mother, the custodial parent, on that date. Instead, sometime after June 30, 1994, defendant left Vermont with the child and traveled to a number of places, including New Hampshire, California, and Hawaii. Although defendant returned to Vermont with the child on July 5, 1994, for a doctor's appointment, after July 17, 1994 defendant was not in Vermont with the child.

Defendant was eventually found in Hawaii, where he waived extradition, and returned to Vermont. In October 1994, he was arraigned on the charge of custodial interference. Defendant moved to dismiss the charge for lack of subject matter jurisdiction. The trial court granted the motion, and the State appeals.

## II.

Defendant argues that his conduct cannot be punished by the State of Vermont because he acted exclusively outside of Vermont. Defendant apparently assumes that the crime of "keeping a child from the child's lawful custodian" occurs where the child is kept, not where the lawful custodian is located. Neither the language of the statute nor the weight of precedent from other states supports defendant's position.

13 V.S.A. § 2451 states, in relevant part:

> (a) A person commits custodial interference by taking, enticing or keeping a child from the child's lawful custodian,

> knowingly, without a legal right to do so, when the person is a relative of the child and the child is less than eighteen years old.
>
> . . . .
>
> (c) It shall be a defense to a charge of keeping a child from the child's lawful custodian that the person charged with the offense was acting in good faith to protect the child from real and imminent physical danger. . . . This defense shall not be available if the person charged with the offense has left the state with the child.

The statute explicitly contemplates application to a person who has kept a child outside of Vermont. Defendant, however, argues that the language in subsection (c) refers only to those who "snatch" a child in Vermont and then leave the state to avoid detection, unlike defendant, who had a legal right to pick up the child in Vermont and to leave the state during the visitation period. This interpretation would have some merit if subsection (c) established a defense to "taking" or "enticing" the child from the child's lawful custodian. But subsection (c) applies only to a charge of "keeping" a child. The only plausible interpretation of this language is that the statute is intended to apply to a person, like defendant, who keeps a child outside of Vermont when the child's lawful custodian is a resident of Vermont.

We also find persuasive the reasoning of courts from other jurisdictions that have held that the custodial parent's state of residence has jurisdiction over the crime of custodial interference, regardless of where the defendant flees with the child. At least four other state supreme courts have considered this issue and ruled in favor of exercising jurisdiction. See *State v. Doyle*, 828 P.2d 1316, 1321 (Idaho 1992) (act of "keeping" or "withholding" child from lawful custodian occurred in Idaho, although parents exchanged custody in Oregon and defendant remained outside of Idaho); *Trindle v. State*, 602 A.2d 1232, 1235 (Md. 1992) (intended result of defendant's conduct — i.e., depriving lawful custodian of custody — formed "an essential ingredient of her offense" and had effect in Maryland, although defendant acted entirely outside of state); *State v. Kane*, 625 A.2d 1361, 1363-64 (R.I. 1993) (Rhode Island court retained jurisdiction over extraterritorial custodial violations, because conduct necessarily produced detrimental effect within Rhode Island); *Rios v. State*, 733 P.2d 242, 249 (Wyo. 1987) (Wyoming could exercise jurisdiction over extraterritorial conduct that caused result within Wyoming). A number of intermediate appellate courts have issued similar decisions. See, e.g.,

*Wheat v. State*, 734 P.2d 1007, 1010-11 (Alaska Ct. App. 1987) (Alaska had jurisdiction to prosecute offense because prohibited result of keeping child from lawful custodian occurred in Alaska); *State v. Aussie*, 854 P.2d 158, 160 (Ariz. Ct. App. 1993) (venue proper because deprivation of lawful custody occurred in custodial parent's home county); *People v. Haynie*, 826 P.2d 371, 374 (Colo. Ct. App. 1991) (though not in state, defendant had legal duty to return children and could be prosecuted for failure to do so); *State v. Evans*, 442 S.E.2d 287, 289 (Ga. Ct. App. 1994) (custodial parent's domicile proper venue for prosecution, even though child was to be returned to custodial parent at defendant's residence); *People v. Caruso*, 504 N.E.2d 1339, 1344 (Ill. App. Ct. 1987) (offense of child abduction based on omission to perform duty imposed by law of state; therefore, Illinois had jurisdiction despite defendant's absence from state); *People v. Harvey*, 435 N.W.2d 456, 457 (Mich. Ct. App. 1989) (Michigan had jurisdiction over parental kidnapping charge because detrimental effects of defendant's intentional retention of child out of state occurred within state); *Roberts v. State*, 619 S.W.2d 161, 164 (Tex. Crim. App. 1981) (act of defendant retaining child out of state resulted in violation of Texas custody decree; thus, Texas had jurisdiction to prosecute offense).

## III.

Defendant argues that the cases from other jurisdictions are based on jurisdictional statutes and precedents that Vermont lacks. Such differences are always grounds for caution in considering precedent from other states. Nonetheless, our analysis is aided by the work of courts that have previously considered this question. The cases identify two possible bases for jurisdiction over a charge of custodial interference. One approach is to consider a defendant's failure to return a child to the child's lawful custodian a crime of omission occurring in the lawful custodian's state of residence. An alternative ground for jurisdiction is the recognition that a state may impose criminal sanctions for out-of-state conduct that has a detrimental effect within the state.

Although most crimes are committed by an affirmative act, under some circumstances a failure to act can result in criminal liability. 1 W. LaFave & A. Scott, Substantive Criminal Law § 3.3, at 282 (1986). For example, a taxpayer who fails to file a tax return may be subject to criminal penalties. See 32 V.S.A. § 5894(b) (establishing

criminal penalties for knowing failure to file tax return when due). To face criminal liability for a failure to act, however, a person must have been bound by a legal duty to act. LaFave & Scott, *supra*, § 3.3(a), at 283. Here, defendant had a legal duty under a court order to return the child to her lawful custodian in Vermont. The information charging defendant with "knowingly ke[eping] the child from the child's lawful custodian without a legal right to do so" is based on his failure to fulfill his legal duty, and that failure can fairly be considered a criminal omission.[1] See, e.g., *Doyle*, 828 P.2d at 1320 ("keeping" or "withholding" child from lawful custodian is crime of omission).

We recognize that Vermont, unlike some other states, does not have a jurisdictional statute explicitly authorizing prosecution for crimes of omission. See, e.g., Colo. Rev. Stat. Ann. § 18-1-201(3) (West 1986) (location of offender immaterial to commission of offense based on omission to perform duty imposed by state law); Ill. Comp. Stat. Ann. ch. 720, act 5, § 1-5(c) (Smith-Hurd 1993) (offense based on omission to perform duty imposed by state law is committed within state, regardless of location of offender); Model Penal Code § 1.03(1)(e) (1985) (authorizing conviction of person for omission to perform legal duty imposed by state law "with respect to domicile, residence or a relationship to a person, thing or transaction in the State"). Indeed, Vermont lacks the type of general jurisdictional statute illustrated by Model Penal Code § 1.03. The absence of such a statute does not, however, preclude Vermont's exercise of jurisdiction. Where there is a legal duty to act, "'failure to perform that duty is, for the purpose of jurisdiction, tantamount to an act.'" LaFave & Scott, *supra*, § 2.9, at 185 (quoting Restatement of Conflict of Laws § 70, cmt. a (1934)); see also *State v. Damon*, 317 A.2d 459, 460-61 (Me. 1974) (although defendant was outside of Maine when he violated furlough, offense was wilful failure to return to prison in Maine; offense was committed in Maine and Maine had jurisdiction to prosecute). Under this analysis, defendant has committed an act within Vermont just as if he had remained in Vermont with the child, and Vermont may properly prosecute him.

---

[1] A close analogy is the crime of nonsupport of a child, which is a crime of omission occurring where the child resides. See *People v. Jones*, 64 Cal. Rptr. 622, 623 (Ct. App. 1967) (offense of nonsupport of minor child is crime of omission committed at place where child resides); *State v. Shaw*, 539 P.2d 250, 252-53 (Idaho 1975) (Idaho had jurisdiction to prosecute defendant for nonsupport, although defendant resided in Nevada at times relevant to charge); *State v. Klein*, 484 P.2d 455, 457 (Wash. Ct. App. 1971) (nonsupport is continuing omission to act wherever child is located).

Alternatively, several states have jurisdictional statutes authorizing prosecution for an offense if "either the conduct that is an element of the offense or the result that is such an element occurs within this State." Model Penal Code § 1.03(1)(a) (1985); see, e.g., Ariz. Rev. Stat. Ann. § 13-109(A) (1989) (criminal prosecutions tried in county where conduct constituting any element of offense or result of such conduct occurred); Ill. Comp. Stat. Ann. ch. 720, act 5, § 1-5(b) (Smith-Hurd 1993) (offense committed partly within state if result that is element of offense occurs within state); Tex. Penal Code. Ann. § 1.04(a)(1) (West 1994) (state has jurisdiction over offense if conduct or result that is element of offense occurs inside state). Again, however, such a statute is not a prerequisite for the exercise of jurisdiction. See *Rios*, 733 P.2d at 249 (lack of specific statute does not preclude exercising jurisdiction over extraterritorial conduct causing result within state). Indeed, the Model Penal Code provision is close to the common-law view that "a state has power to make conduct or the result of conduct a crime if the conduct takes place or the result happens within its territorial limits." LaFave & Scott, *supra*, § 2.9(a), at 180; see also *United States v. Columba-Colella*, 604 F.2d 356, 358 (5th Cir. 1979) (objective territorial theory of jurisdiction permits sovereign state to attach criminal consequences to extraterritorial act, if act was intended to have effect within state); *People v. McLaughlin*, 606 N.E.2d 1357, 1358-59 (N.Y. 1992) (basis of New York's jurisdiction in criminal cases is territorial principle derived from common law; general rule is that state has jurisdiction if either alleged conduct or some consequence of it occurred within state); Restatement (Second) of Conflict of Laws § 37 (1971) ("A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects . . . .").

The United States Supreme Court has also endorsed this view of a state's criminal jurisdiction. In *Strassheim v. Daily*, 221 U.S. 280, 285-86 (1911), the Court permitted Milton Daily's extradition to Michigan, where he had been indicted for bribery, although Daily had acted outside of Michigan. The Court stated:

> If a jury should believe the evidence, and find that Daily did the acts [alleged], the usage of the civilized world would warrant Michigan in punishing him, although he never had set foot in the state until after the fraud was complete. Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in

punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power.

*Id.* at 284-85.[2]

■ Defendant's conduct resulted in the child's mother losing custody of the child. That result occurred, and could only occur, in Vermont, the mother's state of residence. Moreover, the result is not incidental to the offense charged, but is in fact an element of the offense as defined by statute. 13 V.S.A. § 2451(a) ("A person commits custodial interference by . . . keeping a child *from the child's lawful custodian*, knowingly, without a legal right to do so . . . .") (emphasis added); see also *Doyle*, 828 P.2d at 1320 (elements of offense of custodial interference include "(1) an intentional (2) taking, enticing away, keeping, or withholding which (3) unlawfully deprives the custodian of custody"). As Vermont has succeeded in gaining personal jurisdiction over defendant, both the common law and Supreme Court precedent allow his prosecution for out-of-state conduct that had the effect of unlawfully depriving a Vermont resident of custody of her child.

## IV.

Defendant argues, however, that Vermont law, specifically 13 V.S.A. § 2 and related precedent of this Court, precludes Vermont from punishing his conduct. Section 2 states:

A person who, with intent to commit a crime, does an act within this state in execution or part execution of such intent, which culminates in the commission of a crime either within or without this state, shall be punished for such crime in this state in the same manner as if the same had been committed entirely within this state.

---

[2] Given the United States Supreme Court's holding in *Strassheim*, we find unpersuasive the Minnesota Supreme Court's contrary holding in *State v. McCormick*, 273 N.W.2d 624, 628 (Minn. 1978). There, the court held that a Minnesota statute specifically criminalizing a parent's out-of-state detention of a child with intent to deny another's rights under a court order violated the Sixth Amendment to the United States Constitution. The court did not mention *Strassheim*, but cited only a New York case from 1855 for the proposition that "'[t]he penal acts of one state can have no operation in another state.'" *Id.* at 626 (quoting *People v. Merrill*, 2 Parker's Crim. R. 590, 603 (N.Y. Sup. Ct. 1855)).

In *State v. Harrington*, 128 Vt. 242, 250, 260 A.2d 692, 697 (1969), this Court interpreted § 2 in the context of a prosecution for blackmail (13 V.S.A. § 1701). The defendant, a Vermont lawyer, had mailed a threatening letter in Vermont to a recipient in New Hampshire. The threat was based on certain compromising pictures taken in New Hampshire. The defendant argued that because his conduct affected persons and property in New Hampshire, Vermont lacked jurisdiction to prosecute the offense. The Court disagreed, and held that Vermont could prosecute the defendant because he had committed an "'act within this state . . . so related to the crime that if nothing more had followed, it would have amounted to an attempt.'" *Id.* (quoting *People v. Werblow*, 148 N.E. 786, 790-91 (N.Y. 1925)).

In support of his position, defendant relies on *People v. Gerchberg*, 181 Cal. Rptr. 505 (Ct. App. 1982). There, the court held that California could not prosecute a New York resident for failing to return his children to the lawful custodian in California at the end of a visitation period. *Id.* at 507. Under the "settled law" of California, the court noted, "California cannot punish for conduct taking place outside of California unless the defendant has, within this state, committed acts which amount to at least an attempt to commit a crime punishable under California law."[3] *Id.* at 506. Defendant argues that the language of § 2 and our decisions in *Harrington* and *State v. Huginski*, 139 Vt. 95, 422 A.2d 935 (1980), similarly restrict Vermont's jurisdiction to prosecute out-of-state conduct. Following this reasoning, Vermont lacks jurisdiction to prosecute defendant, because he has "done nothing in this state even approaching an attempt," *Gerchberg*, 181 Cal. Rptr. at 506, to violate 13 V.S.A. § 2451.

We note first that if defendant's conduct is viewed as a crime of omission, § 2 poses no bar to his prosecution. As we have already discussed, a failure to perform a legal duty, for jurisdictional purposes, is tantamount to an act. Vermont, as "the state wherein the act is legally required to be performed," has jurisdiction over the crime of omission. LaFave & Scott, *supra*, § 2.9(a), at 185. As both the conduct and the result occurred within Vermont, § 2 is irrelevant.

Moreover, we do not agree that § 2 should be interpreted to deprive Vermont of a state's common-law jurisdiction over out-of-

---

[3] The holding in *Gerchberg* was overruled by statute. Cal. Penal Code § 784.5 (1985) allows for jurisdiction of a criminal action for child abduction in the "jurisdictional territory in which the victimized person resides . . . at the time of the taking or deprivation."

state conduct that produces harmful results within the state. Nothing in § 2 indicates that the grant of jurisdiction is exclusive. Indeed, the title of § 2 when enacted, "An act to provide for penalties for certain acts," suggests that the statute was intended to expand, rather than contract, Vermont's jurisdiction. 1925, No. 129. The statute does, for example, abrogate the restrictive common-law rule that a crime has only one situs, and only the place of the situs has jurisdiction. See LaFave & Scott, *supra*, § 2.9(a), at 180 (describing common-law rule). The situs is the place of the act or omission if the crime is defined only in those terms, but the situs is the place of the result if the result is an element of the crime. *Id.* at 180-81. Section 2 extends Vermont's jurisdiction to include acts committed within the state, where the result, and therefore the situs of the crime, is in another state. Another problem resolved by § 2 is jurisdiction over offenses consisting of several acts, where some of the acts are committed out of state.

Our interpretation of § 2 in *Harrington* is consistent with this view of the statute. In *Harrington*, the blackmail threat was communicated in New Hampshire. At common law, only New Hampshire could have prosecuted the offense. Section 2, however, permitted Vermont to prosecute the offense, because the defendant, with intent to commit a crime, had committed an act within Vermont (the mailing of the letter). In fact, the issue in *Harrington*, whether Vermont could "attach legal consequences to any overt act committed within its boundaries, even though the final impact and injury may occur elsewhere," *Harrington*, 128 Vt. at 250, 260 A.2d at 697, is the reverse of the question posed in this case.

Our decision in *Huginksi*, however, poses a more difficult obstacle. There we considered whether Vermont had jurisdiction to prosecute defendant, a Connecticut resident, with counseling or procuring the burning of his house in Vermont. None of the conversations or arrangements regarding the arson occurred in Vermont, and the defendant did not actually participate in the burning of the house. *Huginski*, 139 Vt. at 98, 422 A.2d at 937. We reversed the conviction for lack of jurisdiction, stating that "[t]he penal laws of a state are enacted as an exercise of sovereignty and are thus restricted in their application to places within the boundaries of the state." *Id.* at 97-98, 422 A.2d at 937. The decision briefly mentions § 2, but rejects it as a ground for jurisdiction, because the "defendant's acts [within Vermont] did not constitute an attempt to commit either crime set forth in the information." *Id.* at 99, 422 A.2d at 937.

*Huginski* discusses neither the common-law principles of jurisdiction nor the Supreme Court's decision in *Strassheim*. Moreover, the broad language in *Huginski* is inconsistent with our earlier decision in *State v. Jost*, 127 Vt. 120, 241 A.2d 316 (1968). In *Jost* the Court held that Vermont had jurisdiction to prosecute a defendant for false advertising, although the defendant had written the advertising material in Canada and mailed it to a newspaper publisher in Boston. *Id.* at 124, 241 A.2d at 320. Copies of the newspaper were circulated in Vermont. The Court stated the "well-settled" principle that "one [who], while absent from the jurisdiction, commits an offense within the state by means of an innocent agency, may be held liable in that state if that is where the crime is accomplished." *Id.* at 124, 241 A.2d at 319.

On reconsideration, we conclude that *Huginski* overstated the limits on Vermont's jurisdiction to prosecute out-of-state conduct causing detrimental effects within Vermont. That jurisdiction exists at common law and has not been abrogated by statute. To the extent that *Huginski* is inconsistent with this opinion, it is hereby overruled. Vermont has made the result of defendant's conduct, the lawful custodian's loss of custody, a crime; that is enough to provide jurisdiction over the offense, even though the acts producing the result occurred elsewhere.

The Wyoming Supreme Court, inquiring whether "any [other] jurisdiction . . . would have taken an interest in pursuing [the defendant's] unlawful conduct," concluded that "the initiative to pursue the matter could only be found where the mother, who was entitled to custody, lives." *Rios*, 733 P.2d at 250. We are equally skeptical that Hawaii or California or any other state where defendant sojourned with his daughter would have cared to prosecute him for his conduct. The harm occurred in Vermont, and Vermont is the proper state to pursue the prosecution.

*Reversed. The charge against defendant is reinstated and the matter remanded for further proceedings not inconsistent with this opinion.*