*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-290

JULY TERM, 2015

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Windham Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Christina Allcock | } | DOCKET NO. 24-1-13 Wmcr |

Trial Judge: David Suntag

In the above-entitled cause, the Clerk will enter:

Defendant appeals from her conviction of custodial interference following a jury trial. She argues that there is insufficient evidence to establish her guilt. We affirm.

Defendant was charged with custodial interference following an incident in January 2013 during which state troopers attempted to enforce a court order transferring custody of her minor child B.A. to the Department for Children and Families (DCF).

The following evidence was presented at trial. The trial court operations manager testified that the emergency care order in this case issued on January 10, 2013, and transferred temporary legal custody of defendant's minor daughter B.A. to DCF pending a temporary care hearing the following day. The order was issued ex parte without a hearing, so defendant had no notice of it before it was enforced. Trooper Kevin Hughes testified that on January 10, 2013, he accompanied a DCF worker to help execute the order by removing B.A. from defendant's home. Two other troopers, including Trooper Matthew Steeves, were present as well. Upon arrival at approximately 8:44 p.m., Trooper Hughes knocked on the door and identified himself. He observed a male juvenile come to the door and then leave without opening the door. The other troopers saw what appeared to be two females at a side window in the residence, but there was no response to the knocking. The troopers continued to attempt to make contact with the occupants of the house. After about twenty minutes, a man arrived. He identified himself as the father of the male juvenile in the home. This man immediately received a call from defendant, who was inside the residence. Defendant then came to the window and Trooper Hughes indicated to her that he had paperwork to serve. Defendant refused to come out of the home.

Eventually, defendant came outside and Trooper Hughes explained to her that a judge had issued an emergency care order transferring custody of B.A. to DCF. Defendant stated that she didn't know where B.A. was. Trooper Hughes explained to defendant that there was an emergency care order to take B.A. and if she did not turn over the child, he would get a warrant to enter the home. Defendant's mother arrived. Trooper Hughes testified that he gave defendant a copy of the order and this occurred about twenty to thirty minutes after his arrival. Defendant refused to believe the order and would not sign to accept service of the order. Trooper Hughes

explained that acceptance of the order merely meant that she had received it and that there would be a hearing the following morning. Defendant again refused to sign the order. Defendant then stated that she would retrieve her daughter from the home, but only if she could first make a written statement of her own. The troopers allowed defendant to write a statement. After writing the statement, defendant said that she wanted to rewrite the statement so she could keep a copy. Trooper Hughes explained that he would make a copy, but would not wait for her to rewrite it. Defendant continued to refuse to turn over the child. Trooper Hughes left to obtain a warrant while Trooper Steeves remained at defendant's home. Trooper Steeves would not allow defendant to reenter the home without him accompanying her, which she refused to allow. At one point, defendant walked towards the door and Trooper Steeves stepped in front of her, and defendant tripped. Defendant was yelling at the officer, suggesting he would assault her child. Soon thereafter, Trooper Steeves arrested defendant. Defendant then agreed to allow her adult son to enter the home, and he emerged with B.A.

At the close of the State's case, defendant moved for acquittal. Defendant argued that there was insufficient evidence to show that she intended to keep B.A. from DCF. The court denied the motion, concluding that there was enough evidence for the jury to conclude that defendant had notice of the order and interfered with DCF's assumption of custody. The jury returned a guilty verdict, and defendant renewed the motion for acquittal. The court again denied the motion, explaining that there was sufficient evidence for the jury to conclude that defendant knew there was order granting DCF custody, and defendant kept the child from DCF even after being presented with the order. Further, the court rejected defendant's argument that there was no interference because any delay in transferring custody was slight, explaining that the statute did not include a time requirement. Defendant appeals.

On appeal, defendant asserts that the court erred in denying her motion for acquittal. "We review the denial of a Rule 29 motion for judgment of acquittal de novo, considering whether the evidence, when viewed in the light most favorable to the State and excluding any modifying evidence, fairly and reasonably tends to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." State v. Ellis, 2009 VT 74, ¶ 21, 186 Vt. 232 (quotation omitted).

"A person commits custodial interference by taking, enticing or keeping a child from the child's lawful custodian, knowingly, without a legal right to do so, when the person is a relative of the child and the child is less than 18 years old." 13 V.S.A. § 2451(a). The elements of custodial interference are "(1) an intentional (2) taking, enticing away, keeping, or withholding which (3) unlawfully deprives the custodian of custody." State v. Wooten, 170 Vt. 485, 491 (2000).

Defendant claims that it was not until she exited her home that she had knowledge of the order. Defendant also claims that once she had knowledge of the order, she did not refuse to comply, but rather merely conditioned her compliance on several requirements, including that she be allowed to write a statement in opposition to the order, that she write a copy of the statement, that her daughter be accompanied by a female DCF worker, and that she be allowed to reenter her home without law enforcement. She argues that while her requests may have delayed the process, the evidence is insufficient to show that she intended to "keep" B.A. from DCF.

We conclude there was sufficient evidence for the jury to determine that defendant intended to keep B.A. from DCF, which had lawful custody.

This case is similar to State v. O'Dell, 2007 VT 34, 181 Vt. 475. In that case, emergency detention orders were issued for the defendant's three children, but when law enforcement showed the defendant the orders and sought to execute the orders, the defendant refused to release the children and would not allow anyone in the home without a warrant. While officers were waiting for a warrant to be obtained, they observed the children leaving the home and detained them. The defendant was convicted of custodial interference. On appeal, this Court held that the evidence was sufficient to support the custodial-interference conviction because even though the defendant claimed she was too upset to understand the meaning of the detention order, there was enough of a basis for the jury to determine she understood that DCF was the lawful custodian. Id. ¶ 11. This evidence included the testimony of DCF employees and police officers that they showed defendant the order and explained that the court had granted DCF custody. Id.

There was similarly sufficient evidence in this case to demonstrate that defendant had notice of the order, and that defendant unlawfully kept B.A. from DCF. Trooper Hughes testified that he explained to defendant that the court had issued an emergency care order. Defendant did not comply at that point and lied about B.A.'s whereabouts. Subsequently, Trooper Hughes provided defendant with a copy of the order and explained it to her. Even after receiving it, defendant denied that it was true and refused to comply. Thus, the evidence, when viewed in the light most favorable to the State, demonstrates that after defendant was that told custody had been transferred to DCF, she prevented DCF from obtaining custody by lying about B.A.'s whereabouts and refusing to cooperate by either bringing B.A. out of the home or allowing officials into the home to retrieve B.A. While defendant claims that she merely conditioned her compliance on several requirements, her actions could reasonably be interpreted by the jury as deliberate measures to delay the transfer of custody to DCF, and thus keep B.A. out of DCF's lawful custody.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

3