### Lucien Savard and Mary Savard
### v.
### Guy George and Beverly George Bolles

[ 214 A.2d 76 ]

June Term, 1965

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, J. J.**

Opinion Filed October 5, 1965

*Gelsie J. Monti* for plaintiffs.

*Daniels and Burgess* for defendants.

**Smith, J.** This is an action for declaratory judgment, in chancery. The Plaintiffs claim ownership of a strip of land on the easterly side of the highway leading from North Calais south to Cranberry Meadow, so-called, located on the west shore of Nelson Pond. The defendant, Beverly George Bolles, is the owner of property, including a cottage, on the west side of the highway.

The subject of the controversy is a wooden stairway opposite the cottage of the defendant, which extends from the easterly edge of the travelled road down the 45% grade to the waters of Nelson Pond, and a wharf extending into the water, which were constructed by the defendant for access to the pond.

The plaintiffs seek to have established their title to the land upon which the stairway and wharf are erected and to have the defendants be permanently enjoined from crossing and trespassing upon the premises.

After hearing in the Washington Court of Chancery on several different dates in July and October, 1963, the Chancellor made findings of fact, and a decree based thereon. The decree of the Chancellor was that the plaintiffs did not own the fee to the land upon which the stairway and wharf of the defendants were located, and that such land was within the three rod limit of the highway right of way. The plaintiffs have appealed here from the decree, from certain of the findings of fact made by the Chancellor, as well as from the failure of the Chancellor to find in accordance with requests to find made by the plaintiffs.

The highway along the westerly side of Nelson Pond was originally surveyed and laid out over a century ago, in 1852, by the Town of Calais. The road, as it now exists, was found by the Chancellor, who viewed the site, to be three rods wide, with the easterly limits of this highway extending a short distance beyond the high water limits of Nelson Pond. The defendants made no claim to ownership of the

disputed land, but based their right to erect the stairway and wharf on written permission from the selectmen of Calais, given in 1962, to maintain such structures within the highway limits.

Plaintiffs claim to be owners in fee of such land by virtue of a warranty deed to them from Fred and Esther LaValley in June, 1946. The description of the land conveyed therein is:

"Starting at a pipe in the ground at the northerly end of the lot and running 253 feet in a southerly direction along the main road, so-called, to another iron pipe; thence turning an angle to the left and proceeding in an easterly direction 56 feet to another iron pipe on the shore of Nelson Pond; thence along the shore of said pond to point of beginning."

It was the contention of the plaintiffs that the limits of the highway as laid out in 1852 left a small area of land between the westerly shore of Nelson Pond and the easterly limits of such highway which was conveyed to the plaintiffs by the deed to them from the LaValleys.

In support of this contention, the plaintiffs employed James Hoag, a civil engineer, to make a survey of the highway, as described in the recorded survey of 1852. It was Mr. Hoag's testimony that the original road was located one rod west of the present travelled highway, which would leave the land claimed by the plaintiffs outside the limits of the highway as originally laid out. Various maps and plans made by Mr. Hoag were received in evidence, together with his testimony. Mr. Hoag also testified that he found several iron pipes near the shore of the pond in the course of his survey, which plaintiffs contended were the iron pipes marking their property lines as described in their deed from the LaValleys.

Admitted by Mr. Hoag was that his survey fell short by twelve feet of meeting the north line of the Town of Calais, at the point described in the 1852 survey. The testimony of Mr. Hoag, and the maps and plans made by him, were vital to the establishment of the plaintiffs' claim of ownership.

Significant, in view of the questions presented, are the remarks of the Chancellor in admitting the survey and maps made by Mr. Hoag over the objections of the defendants. "To save time, we will admit Plaintiffs' 8, 9 and 10. And we think that perhaps the grounds of objections may go to the weight the Court will give to these drawings rather than to their admissability, and with this in mind we will admit them."

Engineering experts improved as witnesses by the defendants testi-

fied that it was an impossibility to accurately re-survey a highway laid out and surveyed more than one hundred years previously. Professor Mara, an engineering instructor at Norwich University, testified that the difference in surveying instruments used at the present time, as compared with those used in 1852, the changes in magnetic declinations, as well as other varying factors over the years, negated any re-creation with accuracy of the 1852 survey by a surveyor or engineer of today. Both Professor Mara and Justice Wheeler, the other engineering expert called by the defendants, stated that in the absence of established markers delineating the limits of a right of way that it was the established custom in Vermont to establish as the center line of an old highway the center line of the present travelled way.

The plaintiffs, to maintain this action, had the burden of establishing their title to the land easterly of the highway, on the shore of the pond where the stairway and wharf had been placed. Without proof of such title they could not sustain their charges of trespass against the defendants. It was essential to the success of plaintiffs' action that the re-survey of their expert Hoag be found by the Chancellor to be an accurate portrayal and definition of the highway boundaries, as laid out in 1852. The deed of 1946 to the plaintiffs, purporting to convey land to them on the east, or pond side, of the highway could convey them no title, in fact, if such land was within the limits of a highway which was in existence prior to the time that they received such deed.

Possibly, it is for this reason that much of the voluminous brief of the plaintiffs is directed to a lengthy and point-by-point argument that the Chancellor should have found in accordance with the evidence of their witnesses and the testimony and survey of their expert witness relative to the boundaries of the Calais road.

But it is the trier of facts to whom is given the sole determination as to the weight of the evidence, the credibility of the witnesses, and the persuasive effect of the testimony. 12 V.S.A. § 2385. *Little* v. *Little,* 124 Vt. 178, 182, 200 A.2d 276, and cases there cited.

The evidence as to the accuracy of the re-survey of the Calais road by Mr. Hoag was conflicting. But the testimony of Mr. Hoag, himself, was that his survey of 1962, although attempting to follow the descriptions given in the 1852 survey, did not establish the road as described in the ancient survey in that his survey placed the end of his line eighteen feet further away from the pond than was indicated by the 1852 survey, and one rod further west than as there described.

The testimony of defendants' expert witnesses, Justice Wheeler and

Professor Mara, was that it was impossible for an engineer of today to establish the highway of 1852 by a survey as it was described in the 1852 description.

The crucial finding made by the Chancellor relative to the plaintiffs' claim of title to the land on the east side of the highway extending to Nelson Pond, is in No. 17 of the Findings of fact. That part of the findings, to which plaintiffs have briefed their exception, refers to the survey, maps and plans introduced by the plaintiffs in support of their claim of title. Such finding reads, in part: "we are not satisfied from a consideration of all the evidence, at least, by the required measure of proof that plaintiffs own the fee in and to the land making up the east embankment of the highway and the lands upon which the defendants have located their stairway."

On an appeal to this Court for a review of findings on exceptions thereto, a finding must stand if supported by any substantial evidence, although there may be inconsistencies or even substantial evidence to the contrary. We must read the evidence in support of the findings, if reasonably possible when considered as a whole. In such consideration we must have in mind that it is the trier of facts to whom is given the sole determination as to the weight of the evidence, the credibility of the witnesses and the persuasive effect of the testimony. *Little* v. *Little,* 124 Vt. 178, 182, 200 A.2d 276, and cases there cited.

The evidence as to the title of the plaintiffs was conflicting. There was substantial evidence before the Chancellor that the survey and plans upon which plaintiffs sought to establish their title were inaccurate. His was the sole determination on whether the weight and persuasiveness of the evidence offered sustained the claim of title which it was here essential for plaintiffs to establish, and upon which they had the burden of proof. No error appears.

Plaintiffs have also briefed exceptions to Findings 12, 13 and 16. Finding 12 and 13 are findings as to distances from the existing Calais road, and the center thereof, to the high water mark of Nelson Pond and are supported by the evidence. Finding 16 reads, "The Court finds the land in question is within the three rods limit of the highway."

Our rule is that this Court must affirm the findings below if there is any credible evidence to support them. *deNeergaard* v. *Dillingham,* 123 Vt. 327, 330, 187 A.2d 194. The evidence below, viewed in this light, was that it was an impossibility to establish the boundaries of the Calais road by the filed description in the survey of 1852, and there is no evidence of any re-survey of such road by the town or State.

In the absence of established monuments, the evidence showed it was the engineering custom in this State to establish as the center line of an old highway the center line of the present travelled way. The evidence being that the terminations and boundaries of the Calais highway could not be ascertained by the old survey of 1852, and with no evidence that a re-survey had been made, the provisions of 19 V.S.A. § 36 became applicable:

"When the survey of a highway has not been properly recorded or the records preserved, or, if termination and boundaries cannot be ascertained, the board of selectmen may use and control for highway purposes one and one-half rods each side of the travelled portion thereof."

The evidence is clear that the land in dispute on Nelson Pond is within one and a half rods of the center line of the present travelled portion of the highway. No error is found.

Plaintiffs have also excepted to Finding No. 15 which is to the effect that the Selectmen of Calais granted a right to the defendant, Beverly George Bolles, to erect the stairway and wharf from the highway level to the lake. Such finding is supported by the undisputed evidence. The plaintiffs' exceptions to the finding are directed to a claimed lack of legal authority in the Selectmen of Calais to grant such an easement within the highway limits to the defendant. But the Chancellor found only that such permission was granted, and made no finding as to its validity or effect. No consideration of the grounds advanced by the plaintiff is necessary by us in view of the finding.

Plaintiffs have not briefed their exception under Roman numeral II of their issues for review and there is nothing for consideration. The plaintiffs next briefed exception is numbered Roman numeral III: "There is no evidence in the case upon which the court could make findings upon which to predicate a decree for the defendants." This is merely a reiteration of the same claims as to evidence which this Court has already considered in ruling upon plaintiffs' exceptions to finding, and what has been said in that part of the opinion is applicable to the questions attempted to be reviewed here. Plaintiffs take nothing by this exception.

Under Roman number IV plaintiffs state the issue here is: "The plaintiffs are the sole owners of the land occupied by the easterly half of the highway in question subject only to the public rights in the highway."

Under this issue plaintiffs again argue as to the weight of the evi-

dence and the credibility of the witnesses as being in their favor on the question of title. We have already stated in this opinion, as in many others, that these were questions for the sole determination of the trier of facts.

Having already sustained the finding of the Chancellor (No. 17) that the plaintiffs did not sustain their burden of proof that the land in question was owned by them, the claim which plaintiffs again seek to present has already been answered adversely to them.

Plaintiffs further claim under this heading of their brief as to the rights they have in highway land, not used for highway purposes, could only be considered by us if they had established the title they claimed to the land between the travelled part of the highway and the pond. This claim is without merit of any kind in the absence of a finding that plaintiffs possessed such title.

Under the heading, Roman numeral V, plaintiffs have briefed exceptions to the Chancellor's failure to find in compliance with some 21 of their requests to find.

We have carefully considered each of the requests to find made by the plaintiffs, the non-inclusion of which in the Findings of Fact of the Chancellor is claimed to be error.

Plaintiffs' requests to find Numbers 1, 3b, 3c, 4, 5, 8, 9, 10, 12, 14, 15, 19, 21, 22, 24 and 25, are all requests to find facts in accordance with both the evidence and the theory of the plaintiffs, although such evidence was contested. All the other requests, with the exception of No. 25, are for findings immaterial to the determination of the issue.

"It is the duty of the court, in making findings, to sift the evidence and state the fact. There is no requirement to relate the opposing claims of the litigant, nor to detail the evidence advanced in support of the respective claims."

*Amey* v. *Hall*, 123 Vt. 62, 65, 181 A.2d 69.

What the plaintiffs are really complaining about in this portion of their brief is that as a result of the sifting of the evidence the Chancellor did not find the facts as the plaintiffs would have had them. No error is found.

Plaintiffs' request No. 25, as we read it, is that a finding should have been made that they occupied the disputed premises by adverse possession. No such claim is advanced in the petition of the plaintiffs,

and the refusal of the Chancellor to comply with this request is sustained.

*Decree Affirmed.*

*Holden, C. J.,* concurs in the result.