## Fred B. Crawford v. Lumbermen's Mutual Casualty Company

[ 220 A.2d 480 ]

April Term, 1966

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed June 7, 1966

*A. Pearly Feen* for plaintiff.

*Downs & Rachlin* for defendant.

**Holden, C.J.** The defendant insurer presents this appeal from a declaratory decree of the court of chancery for Orleans County. The court adjudged the defendant to be obligated to defend an action in negligence against the plaintiff and John LeBlond. The law action was instituted in Windsor County in behalf of Clinton Willey, who was injured May 18, 1960, while a passenger in the plaintiff's farm truck operated by the plaintiff's regularly employed farmhand, John LeBlond.

The defendant disclaimed coverage on the strength of a provision of the insurance agreement which excludes liability for "bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of (1) domestic employment by the insured, if benefits therefore (sic) are in whole or in part either payable or required to be provided under any workmen's compensation law, or (2) other employment by the insured." The decisive question is whether Willey, the claimant in the law action, was an employee of the plaintiff and whether his injuries arose out of and in the course of his employment by the plaintiff.

The chancellor answered this question in the negative. He concluded in his findings that Clinton Willey was not an employee of

the plaintiff at the time of the accident, that he was not performing general farm work as an employee of the plaintiff and that his injury did not arise out of and in the course of employment by the plaintiff.

The subordinate facts upon which this conclusion rests are reported in the findings. At the time of the accident the plaintiff, a practicing dentist in Newport, owned two farms in that area, referred to as the northern and southern farms. He employed John G. LeBlond as a full time general farm worker. Occasionally the plaintiff engaged temporary help to assist in the farm operation.

Sometime in April preceding the accident, the plaintiff advertised in a local newspaper for a man to cut cedar posts at ten cents a post. Clinton Willey, a retired municipal employee, responded. It was agreed that Willey was to cut posts at his own selection from a general area on the farms designated by the plaintiff. He was to be compensated at a unit rate for each post cut.

Willey was not physically well and he cut posts when his health permitted. He planned his own work. The number of posts cut and the time and place of cutting were according to his own choice. No time records were kept of the time he spent in cutting and no social security or income taxes were withheld by the plaintiff.

The chancellor found: "During the course of his post cutting, Willey was his own boss. Plaintiff exercised no control over him. He was sort of an independant contractor so far as cutting posts was concerned."

Between May 1 and May 14, 1960, Willey worked on the plaintiff's farm repairing fences and was paid for this work. This particular work was completed on May 14 and Willey resumed cutting cedar posts on his own time.

On May 18, 1960, the plaintiff transported Willey to the south farm for the purpose of permitting him to cut fence posts. He left Willey at this location and departed from the farm. The plaintiff's hired man, LeBlond, was preparing to transport some cattle to the north farm. Without being requested by anyone, Willey joined LeBlond and later assisted him in loading and unloading the livestock for pasture at the north farm. On the return trip the truck was involved in an accident and Willey sustained severe personal injuries. The findings report that Willey was riding with LeBlond at the time of the accident "because he wanted to and not because he had been

employed by the plaintiff to accompany LeBlond to assist him in the transportation of cattle."

Willey's mental condition following the accident was such that he was incapable of asserting any claim for labor previously performed for the plaintiff. In December 1960 Willey was paid ten dollars and twenty cents for cutting one hundred two posts.

The chancellor characterized the work performed by Willey, aside and apart from the cutting of cedar posts, as "purely occasional—not regular, periodic or certain." His findings go on to report that he is unable to find the plaintiff exercised any control or that he had any right to control Willey on the date of his injury.

In so doing, the chancellor referred to conflicts in the evidence. He made specific reference to a written statement procured by an investigator of the defendant, and signed by the plaintiff and his wife, about three weeks after the accident. Except for a correction interlineated and initialed before signing, the statement was written by the defendant's representatives, recording answers given by the plaintiff. The writing was offered in evidence by the plaintiff and received as plaintiff's Exhibit 1. Concerning the working status of the accident victim, it states:

"A few days before his accident on 5-18-60, Clinton Willey had been working on several farm chores, including fence posts, in my employ. He was working at the time of the accident.—I had paid Clinton Willey 10¢ per fence post for cutting them and when he did other routine farm chores (F.C.) work one dollar per hour. (F.C.)

At the time of his accident LeBlond and Willey were returning from bringing young stock to the northern farm and were going to the southern farm. Mr. Willey was on an hourly rate at that time. Mr. Willey is a retired municipal employee and has worked for me only about two weeks before his accident of 5-18-60.

Until the present time, all money paid by me to Clinton Willey has been paid for farm work and not for post work. On May 14, 1960, I paid him $43.00, check No. 15312, for farm work at $1.00 per hour. He had received no post money at that time or to date."

The plaintiff explained that the statement was hurriedly given while he was about to attend a waiting patient. The plaintiff also testified, on cross-examination, that the insurance adjuster had been to

see him two or three times before, that the plaintiff was anxious to have the case settled and the investigator indicated that he thought the written statement would expedite the settlement.

The findings report the facts in the aspect most favorable to the plaintiff. The defendant candidly concedes that there is evidence to support the findings reported by the chancellor. The appellant attacks the chancellor's adjudication of the issues of fact as an abuse of discretion, placing principal reliance on the extrajudicial written statement quoted above.

It is established by rule of law in countless decisions since 1824, and by statute as well, that findings of fact must stand if there is any credible evidence fairly and reasonably supporting them. 12 V.S.A. §2385; *Noble* v. *Jewett's Admr.* (1824) 2D. Chipman 36; *deNeergaard* v. *Dillingham,* 123 Vt. 327, 330, 187 A.2d 494; *Savard* v. *George,* 125 Vt. 250, 254, 214 A.2d 76.

The facts reported by the chancellor have the standing of a verdict of the jury which has been expressly approved by the trial court. *Cook* v. *Holden,* 113 Vt. 409, 412, 35 A.2d 353. Although this Court has the power to set the lower court's findings aside, we will not do so where the evidence is in conflict, merely because the evidence preponderates against them. *Putnam* v. *Woodward,* 111 Vt. 39, 41, 10 A.2d 186. Intervention on appeal is justified only when contrary proof so predominates the controversy that the record establishes no reasonable basis upon which the findings can stand. *Platt, Admx.* v. *Shields and Conant,* 96 Vt. 257, 272, 119 Atl. 520; See also *Catto* v. *Liberty Granite Co.,* 101 Vt. 143, 147, 141 Atl. 684; *Grow* v. *Wolcott,* 123 Vt. 490, 494, 194 A.2d 403.

The chancellor directed attention in his finding to the inconsistencies between the statement of the plaintiff and his wife to the defendant's adjuster and their sworn testimony. He relied on the latter although it was in contradiction of prior statements made out of court.

Of course, the repugnancy of the written statement tended to discredit the plaintiff's testimony at the trial, indicating the witness was in error about some of the true facts, at one time or the other. The statement also had probative value as an admission of the facts stated. *Hall* v. *Royce,* 109 Vt. 99, 108, 192 Atl. 193; 4 Wigmore Evidence §1048 (3d. Ed.).

■ However persuasive, an informal admission of this sort is in no sense final or conclusive against the party whose utterance it is. It is merely an inconsistency which discredits, in a greater or lesser degree, his present claim. It may be explained or corrected by other evidence. In the last analysis, its probative force is for the trier of the fact after due consideration of the circumstances under which the statement was given and the testimony of other witnesses bearing on the issue under investigation. *Stowe Admx.* v. *Bishop,* 58 Vt. 498, 500, 3 Atl. 494; *LaFlam* v. *Missisquoi Pulp Co.,* 74 Vt. 125, 137, 52 Atl. 526. Thus when a witness makes two statements, inconsistent with each other, both are for consideration and it is for the trier of the fact to determine which is to be accepted as true. *Piper* v. *Oakland Motor Co.,* 94 Vt. 211, 214, 109 Atl. 911; *Barilone Sons Construction Co.* v. *Reynolds,* 109 Vt. 436, 439, 199 Atl. 259.

It is apparent from the findings that the chancellor gave proper attention to the unsworn statement. However, in the last analysis, he relied heavily on the lack of the plaintiff's control and the absence of his right to direct the activities of the worker he had engaged.

■ The restrictive clause in the policy with which we are concerned is generally recognized as a valid attempt to exclude special hazards incident to the master and servant relationship where protection is usually available through workmen's compensation or employers' liability insurance. 7 Am. Jur. 2d Automobile Insurance §132.

■ In determining the perplexing question of whether a worker is an employee or an independent contractor, the common law decisions on the relationship of master and servant afford a safe guide. The master test is the right to control the work. *Kelley's Dependents* v. *Hoosac Lumber Co.,* 95 Vt. 50, 53, 113 Atl. 818.

The opinion of the Court by Justice Powers points out:

"The truth is that the ultimate test depends upon divers considerations of varying importance, all of which must be considered, and no one of which is determinative; and it is extremely difficult, if not impossible, to make a statement of definite facts by which the status of a given person can unfailingly be determined." *Kelley's Dependents* v. *Hoosac Lumber Co., supra,* 95 Vt. at 52.

In the present case, the fact that Willey was paid by the unit for each fence post cut was an important index, pointing toward an independent contractual relationship. *Kelley's Dependents* v. *Hoosac Lumber Co., supra*, 95 Vt. at 55. It is also significant that the worker's engagement was casual, over an indefinite period, without fixed working hours and at the will and discretion of the worker. *Chamberlain* v. *Central Vermont Railway Co.*, 100 Vt. 284, 289, 137 Atl. 326; See also 7 Am. Jur. 2d Automobile Insurance §132.

Our search of the record indicates there was no evidence that Willey was requested by either the plaintiff, or his regularly employed farmhand, to assist in the loading or unloading of the cattle. Neither does it appear that Willey was directed to accompany LeBlond on the trip when the misadventure occurred.

It appears that, as to the cattle detail, Willey was a volunteer. LeBlond's answer to a question directed to this point was:

> "Like I said before, I didn't have to ask him. He was a nice man. If he see me, I was doing something, and he knew he was any hand at all, he would come and help me. No, I didn't ask him."

To be sure, the evidence was conflicting on the central question of whether the accident victim was the plaintiff's employee. The chancellor's statement of his inability—"to find that there existed between the plaintiff and Willey on May 18, 1960, such an employment contract as to make Willey an employee of the plaintiff"—is equivocal. Nonetheless, it is the equivalent of a positive finding for the plaintiff. The evidence which persuaded the mind of the trier to this result is neither slight nor so inconclusive that we can say as a matter of law that there was error in his decision. *Sparrow* v. *Cimonetti*, 115 Vt. 292, 300, 58 A.2d 875. To the contrary, there is substantial evidence which fairly and reasonably supports the determination of the trial court. This bars our intervention on appeal even though there be inconsistencies and persuasive evidence to the contrary. *D'Amato* v. *Donatoni*, 105 Vt. 496, 502, 168 Atl. 564; *Holton Estate* v. *Ellis*, 114 Vt. 471, 488, 49 A.2d 210; *Metcalf Co.* v. *Crossroads, Inc.*, 121 Vt. 147, 150, 151 A.2d 307.

*Decree affirmed.*