## In re Jerry Cadieux

[285 A.2d 738]

No. 148-70

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed December 7, 1971

*Coffrin, Pierson & Affolter,* Burlington, for Plaintiff.

*James M. Jeffords,* Attorney General, and *Raymond S. Fitzpatrick,* Assistant Attorney General, for the State.

**Shangraw, J.** Under date of August 8, 1968, the Unemployment Compensation Division of the Department of Employment Security issued a determination that there was due and owing from Jerry Cadieux, the appellant, contributions in the amount of $6,309.04 together with interest and penalty in the amount of $134.84, plus lien fee of $5.00. 21 V.S.A. § 1321.

Thereupon, Jerry Cadieux petitioned for a hearing before a referee, under the provisions of 21 V.S.A. § 1331, to determine his liability, if any, for the amount assessed against him. The petition alleged, in substance, that during the period covered by the assessment appellant was not the employer of the laborers with respect to those wages contributions were assessed, but rather that the employer was Cooley Building Corporation.

The petition was heard by the chief appeals referee on December 4, 1968. Findings of fact were made by the referee on

April 24, 1970, and the determination of the Unemployment Compensation Division was affirmed by him.

Later, on May 2, 1970, Mr. Cadieux, by his attorney, filed a request for a review of the findings and decision of the referee under the provisions of 21 V.S.A. § 1332. The Employment Security Board took additional evidence and heard oral argument. Additional findings of fact were made by the board on October 13, 1970, and it affirmed the determination made by the chief appeals referee. To this decision appellant, Jerry Cadieux, has duly filed his notice of appeal to this Court.

The transcripts and the findings of the referee which were later supported by those of the board reveal the following facts. Mr. Cadieux is a contractor under the firm name of Trowel Trades Contractor. Since 1965 his business has been plastering, general masonry work, ceramic tile and cement work. He has been an employer subject to the Vermont Unemployment Compensation law since November 22, 1966, and has done contract work for various construction companies.

On September 29, 1967, the appellant entered into a contract with the Cooley Building Corporation to furnish all labor, material, equipment and services relating to brick and block masonry and slate work at a construction site of the International Business Machines Corporation at Essex Junction, Vermont. Work was scheduled to commence on October 1, 1967. By this subcontract Mr. Cadieux was to receive $368,000.00. In quoting the price to the Cooley Building Corporation he figured a 20% profit on the IBM job which was the same percentage on his other jobs.

Cadieux knew that Cooley Building Corporation was not the prime contractor on the IBM project and that Huber, Hunt & Nichols was the prime contractor.

Cadieux borrowed $50,000.00 to start the IBM job. He invested all the cash he had.

Cadieux's foreman kept account of the time of his men on this project and reported weekly to appellant. When more masons were needed Cooley would contact Cadieux who would get in touch with the union business agent. The business agent of the union contacted Cadieux concerning overdue health and welfare payments due the union and threatened to close the job down if not promptly made.

As the job went along Cadieux was unable to meet his payroll. He did not have enough working capital to maintain the job without running into problems of work stoppage due to lack of funds to pay the employees and various materialmen. Cooley advanced money to Cadieux so that he could meet his net payroll. Such payments to Cadieux by Cooley were charged by Cooley against its contract with Cadieux. Advances were also made by Cooley so that Cadieux could make payment to the Union Health and Welfare fund for Cadieux's employees. These advances by Cooley to Cadieux exceeded the amount of requisitions on completed work.

In Cadieux's judgment he did not feel that he had made a bad bargain until the month of December, 1967. The only reason he stayed on the job was that he hoped to get back his investment.

The contract between Cadieux and the Cooley Building Corporation was terminated by memorandum of agreement dated May 22, 1968. The workers carried on the payroll of Cadieux and working on the IBM project from October 1, 1967 to May 22, 1968, looked to and were dependent upon Jerry Cadieux for the payment of their wages. They were under his control and direction. On May 22 the workmen of Cadieux were removed from his payroll and were then placed on the payroll of Cooley Building Corporation. From then on they were paid by Cooley.

To summarize, the workmen so carried on the payroll of Jerry Cadieux and performing services for him on the IBM project were hired by Cadieux. Their wages were paid by him and he could fire or discharge them or otherwise remove them from service at any time.

The limited issue presented for review is whether or not Jerry Cadieux, from December 31, 1967 to May 22, 1968, was the employer within the meaning of the Unemployment Compensation Law, of individuals working on the IBM project and who received their wages for such services from him.

21 V.S.A. § 1301(6)(B) in part provides:

> Services performed by an individual for wages shall be deemed to be employment subject to this chapter. . . .

The appellant does not dispute the fact that the workmen on his payroll and performing services on the IBM project under

his contract with Cooley Building Corporation from October 1, 1967 to January 1, 1968, were his, the appellant's employees. He filed contribution reports and paid contributions based on wages paid to such workmen. On May 7, 1968, he filed with the Department of Employment Security a contribution report for the first quarter of 1968 based on wages paid to employees of the appellant, including workmen carried on his payroll and working on the IBM project. No remittance accompanied the report.

Furthermore, on June 20, 1968, the appellant informed Mr. Galbreath of the Department of Employment Security that he, Jerry Cadieux, had removed himself from the IBM job, and that certain sums were still due him from the contractor, Cooley Building Corporation. Also, he was unable to remit any of the payroll taxes to any of the taxing agencies, including the Department of Employment Security.

Appellant's claim that the workmen in question were the employees of Cooley Building Corporation during the period for which the assessment was made is untenable. The record clearly supports the determination made by the Department of Employment Security that the appellant, Cadieux, from December 31, 1967 to May 22, 1968, was the employer of the workmen concerned within the meaning of the unemployment compensation statute. 21 V.S.A. § 1301. See *Crawford* v. *Lumbermen's Mutual Casualty Company*, 126 Vt. 12, 17, 220 A.2d 480 (1966); *Journal Publishing Co.* v. *State U.C.O.*, 175 Or. 627, 155 P.2d 570, 585 (1945).

*The decision of the Department of Employment Security sustaining the determination of the Chief Appeals Referee is affirmed. Let the result be certified.*