Gareld DAVIS, Plaintiff,

v.

LIBERTY MUTUAL INS. CO. and Schwan's Sales, Enter., Defendants.

No. 2:96–CV–158.

United States District Court, D. Vermont.

Aug. 14, 1998.

Richard Kevin Bowen, Boylan & Bowen, Springfield, VT, for plaintiff.

Daniel L Burchard, Lori Reuschel Choiniere, McCormick, Fitzpatrick, Kasper & Burchard, Burlington, VT, for Defendant Liberty Mut. Ins. Co.

Robert P. Gerety, Jr., White River Junction, VT, for Defendant Schwann's Sales Enter.

## OPINION AND ORDER

SESSIONS, District Judge.

Plaintiff, Gareld Davis ("Davis"), filed this action on May 13, 1996, seeking declaratory relief requiring Defendants Schwan's Sales Enterprises ("Schwan's") and Liberty Mutual Insurance Company ("Liberty Mutual") to provide direct liability insurance coverage, to indemnify and pay a $1,711,790.00 judgment obtained by Davis, attorney's fees, and the costs and expenses of litigation. The parties filed cross motions for summary judgment on all counts. For the reasons stated below, Liberty Mutual's and Schwan's motions for summary judgment are granted and Davis's motion for summary judgment is denied.

## FACTUAL BACKGROUND

Plaintiff, Gareld Davis was severely injured when the truck in which he was traveling crashed. The truck was owned by Schwan's and driven by Daniel Finnell ("Fin-

nell"). At the time of the accident Davis and Finnell were Schwan's employees and were making a delivery in the course of employment. Finnell failed to negotiate a turn in the road, the truck slid into a ditch and flipped several times, eventually coming to rest against a tree and a stone wall. Davis suffered extensive injuries to his head and back when he was pinned under the truck.

At the time of the accident Schwan's was insured by Liberty Mutual. Schwan's provided workers' compensation insurance and uninsured/underinsured motorist ("UM/UIM") coverage to its employees through Liberty Mutual. In addition to workers' compensation insurance and UM/UIM coverage, Liberty Mutual provided Schwan's with a separate Business Auto Insurance Policy (the "auto policy" or "policy") which had a direct liability limit of $2,000,000.00. The auto policy insures "anyone using with [the named insured's] permission a covered auto." Exhibit A, p. 2, Part IV, Liability Insurance, ¶ D. The auto policy also obligates Liberty Mutual to defend suits and pay on behalf of an insured "[a]ll sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident resulting from the ownership, maintenance or use of a covered auto." Exhibit A, p. 2, Part IV, Liability Insurance, ¶ A. However, Liberty Mutual's obligation to defend does not extend to "[b]odily injury to any fellow employee of the insured arising out of and in the course of his or her employment." Exhibit A, p. 2, Section IV, Liability Insurance, ¶ C, Exclusion 4 (hereinafter the "fellow employee exclusion").

Davis and Finnell have little memory of what they were told by Schwan's concerning insurance coverage. Davis vaguely recalls that when he applied for his job, Stanley Ostrow, Schwan's representative, told him that he would be covered "both personally and liability ways" if he was involved in an accident. Exhibit 7, Deposition of Gareld Davis, p. 20, L 19–20. Finnell has no memory of any representations concerning insurance coverage.

Davis sued Finnell seeking damages for his injuries in the accident. Finnell then asked Liberty Mutual to defend and indemnify him. Liberty Mutual refused Finnell, citing the fellow employee exclusion clause.

Davis and Finnell settled. Under the terms of the settlement Davis received from Finnell and his insurer, New Hampshire Group Insurance Company ("New Hampshire Group"), the $20,000.00 limit of New Hampshire Group's personal auto liability policy. Also, Finnell assigned to Davis all his rights against Liberty Mutual and Schwan's. Finnell stipulated that a judgment could be entered against him for $1,711,790.00 (the "Agreed–for–Judgment"). In return, Davis gave Finnell and New Hampshire Group a covenant not to sue and a covenant not to execute. Windham Superior Court granted a judgment order against Finnell for $1,711,790.00. Davis then sued Liberty Mutual and Schwan's Sales for the Agreed–for–Judgment ($1,711,790.00).

In the meantime, Liberty Mutual paid more than $80,000.00 to Davis in workers' compensation benefits. Liberty Mutual then placed a workers' compensation lien on the $20,000.00 that New Hampshire Group had paid Davis.

Davis seeks declaratory relief rendering the auto policy's fellow employee exclusion invalid and unenforceable. He claims that the fellow employee exclusion violates the spirit and the principle of the financial responsibility statute. Davis also seeks damages on breach of contract, bad faith, gross misconduct, and good faith and fair dealing claims.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate in cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to a judgment as a matter of law. See Fed.R.Civ.P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). A party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party op-

posing summary judgment may not rest on its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In its review, this Court views all of the facts and all of the inferences drawn from the facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. *Id.* 475 U.S. at 587, 106 S.Ct. 1348; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

*II. Declaratory Relief*

■ Davis is a fellow employee as defined by Liberty Mutual's auto policy. Under Vermont law, an injury arises in the course of employment when it occurs within a period of time when the employee is on duty and in a place where the employee may reasonably be expected to be while fulfilling the duties of his or her employment contract. *See In re Estate of Marsigli v. Granite City Auto Sales, Inc.,* 124 Vt. 95, 97, 197 A.2d 799, 802 (1964)(finding an injury arises in the course of employment when it occurs within the period of time when employee is on duty and at a place where they may reasonably be expected to be while fulfilling the duties of their employment contract); *see also Moody v. Humphrey & Harding Inc.,* 127 Vt. 52, 56, 238 A.2d 646, 649 (1968) (finding an injury occurs in the scope of employment when it occurs at a time and place where the employee may reasonably be expected to be while fulfilling the duties of his employment contract). Here, it is undisputed that the accident arose out of and occurred in the course of employment, and as a result, Liberty Mutual's fellow employee exclusion applies to the facts of this case.

■ This case presents an important question. Does the fellow employee exclusion clause violate section 800(a) of title 23 of Vermont Statutes Annotated, Vermont's fi-

nancial responsibility statute? *See* Vt. Stat. Ann. tit. 23, § 800(a) (1987 & Supp.1997). For the reasons stated below, this Court holds that the fellow employee exclusion clause in question does not violate the statute.

*A. Statutory Construction*

This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) and is thus required to apply Vermont law as to all substantive issues. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). It is established law that when the state supreme court has not interpreted a particular statute, it is the duty of this Court in a diversity action to anticipate how the state court would interpret the statute. *See Deveny v. Rheem Mfg. Co.,* 319 F.2d 124, 129 (2d Cir.1963)(finding that a federal district court in a diversity case hearing an action based on injuries sustained in Vermont must look to Vermont law and rules of statutory interpretation).

■ This Court must apply the same rules of statutory construction that the Supreme Court of Vermont would apply. *See Travelers Ins. Co. v. 633 Third Assoc.,* 14 F.3d 114, 119 (2d Cir.1994)(federal district court must apply the same analysis that the Supreme Court of Vermont would apply). It is well established that statutory interpretation should begin with statutory language itself. If the meaning of a statute is plain this Court must enforce the statute according to its obvious terms. *See Donoghue v. Smith,* 119 Vt. 259, 263, 126 A.2d 93, 96 (1956). However, if the meaning of the statute is not clear this Court must ascertain and give effect to the intention of the legislature. *See State v. Hull,* 143 Vt. 353, 354, 465 A.2d 1371, 1372 (1983) (stating that the rules of statutory interpretation are aids developed for the purpose of determining legislative intent). Under Vermont law, "[t]he rules relating to plain and ordinary meanings are ... only starting points on the path to the objective of legislative intent." *State v. Baldwin,* 140 Vt. 501, 510, 438 A.2d 1135, 1140 (1981)(stating that rules of statutory interpretation are not laws, but tools to be used to determine the legislative intent). In

addition, the Supreme Court of Vermont presumes that when the legislature passed the statute it was mindful of the relevant judicial decisions and prior legislation. *See Thayer v. Herdt*, 155 Vt. 448, 453, 586 A.2d 1122, 1125 (1990) (presuming that the legislature made statutory changes in light of the relevant judicial decisions and legislation); *see also State v. Anair*, 123 Vt. 80, 81, 181 A.2d 61, 63 (1962)(presuming that changes in state law are made in light of relevant decisions by the Supreme Court of Vermont); *Donoghue v. Smith*, 119 Vt. 259, 263, 126 A.2d 93, 96 (1956)(presuming that when legislature enacted a statute it acted with full knowledge of the prior legislation on the same subject). When interpreting a statute, the Supreme Court of Vermont examines every part of the act, the subject matter, the effects and consequences and the reason and spirit of the law. *See First Nat'l Bank of Boston v. Harvey*, 111 Vt. 281, 292–3, 16 A.2d 184, 187 (1940)(finding that the intention and meaning ascertained by a broader consideration of a statute is valid even when the it conflicts with the literal sense of the statutory language); *see also Rutland Cable T.V., Inc. v. City of Rutland*, 122 Vt. 1, 3, 163 A.2d 117, 118 (1960)(finding that the intention and true meaning of the legislature are to be ascertained by considering the whole and every part of the act, the subject matter, its effect, and consequences). However, the interpretation of the statute should not go so far as to make the act ineffective or lead to irrational consequences. *See Audette v. Greer*, 134 Vt. 300, 302, 360 A.2d 66, 68 (1976)(finding a court's interpretation of statutory language must not be irrational).

Therefore, the object of the Court's analysis is to ascertain and give effect to the intention of the state legislature. The Court will employ the rules of statutory interpretation as tools to determine the legislative intent and will consider several factors: (1) the plain meaning and purpose of the statute, (2) relevant Supreme Court of Vermont decisions, (3) prior legislation such as the exclusivity provision of workers' compensation, and (4) administrative decisions by the Department of Banking, Insurance, Securities & Health Care Administration approving of fellow employee exclusions. Also, the Court will examine the effects, consequences, and the spirit of the statute in terms of its purpose. The ultimate objective is to anticipate whether or not the Supreme Court of Vermont would interpret the financial responsibility statute to prohibit fellow employee exclusions.

## B. The Purpose of the Financial Responsibility Statute

The financial responsibility act was enacted in 1986 to ensure that a person injured in an automobile accident had a source of compensation. It requires all owners and operators of motor vehicles to have liability insurance.[1] *See* Vt. Stat. Ann. tit. 23, § 800(a) (1987 & Supp.1997). Every owner or operator of a motor vehicle must have at least $20,000.00 of liability insurance. *See* Vt. Stat. Ann. tit. 23, § 800(a) (1987 & Supp. 1997). A violation of the act is punishable by up to a $100.00 fine. *See* Vt. Stat. Ann. tit. 23, § 800(b) (1987 & Supp.1997).

In this case, the owner and operator of the motor vehicle carried the minimum liability insurance. The owner, Schwan's, had liability insurance with Liberty Mutual. The operator, Finnell, was insured by the New Hampshire Group. Therefore, on its face, the requirements of the statute were met because the owner and operator carried the appropriate insurance.

---

1. The statute provides in relevant part:

No owner or operator of a motor vehicle required to be licensed shall operate or permit the operation of the vehicle upon the highways of the state without having in effect an automobile liability policy or bond in the amounts of at least $20,000.00 for one person and $40,000.00 for two or more persons killed or injured and $10,000.00 for damages to property in any one accident. In lieu thereof, evidence of self-insurance in the amount of $100,000.00 must be filed with the commissioner of motor vehicles. Such financial responsibility shall be maintained and must be evidenced in a form prescribed by the commissioner. The commissioner may require that evidence of financial responsibility be produced before motor vehicle inspections are performed pursuant to the requirements of 23 V.S.A. § 1222.

Vt. Stat. Ann. tit. 23, § 800(a) (1987 & Supp. 1997).

## C. Relevant Judicial Decisions

Before the financial responsibility statute was enacted fellow employee exclusion clauses were common in insurance policies and were expressly upheld by the Supreme Court of Vermont. *See Medlar v. Aetna Ins. Co.*, 127 Vt. 337, 347, 248 A.2d 740, 747 (1968)(holding that a fellow employee exclusion did not violate state law). Moreover, fellow employee exclusion clauses have been specifically recognized as a valid limitation on liability coverage. *See Crawford v. Lumbermen's Mut. Cas. Co.*, 126 Vt. 12, 17, 220 A.2d 480, 483 (1966)(holding that a fellow employee exclusion is a valid limitation on liability coverage). In *Medlar* and *Crawford* the Supreme Court of Vermont concluded that fellow employee exclusion clauses are valid where employees are already covered by workers' compensation. The Supreme Court of Vermont has not considered the fellow employee exclusion clause since the Vermont state legislature passed the financial responsibility statute in 1986. *See* Vt. Stat. Ann. tit. 23, § 800(a) (1987 & Supp.1997).

When it enacted the financial responsibility statute, the legislature did not express an intention to overrule *Medlar* or *Crawford*. The plain meaning of the statute does not prohibit fellow employee exclusions. As a matter of statutory interpretation, when the legislature enacted the financial responsibility statute, it was aware of the Supreme Court of Vermont's decisions upholding fellow employee exclusions. *See Thayer v. Herdt*, 155 Vt. 448, 453, 586 A.2d 1122, 1125 (1990). Moreover, the Supreme Court of Vermont's reasoning in *Medlar* and *Crawford* is in harmony with the purpose of the financial responsibility statute: to ensure coverage for every Vermonter injured in an auto accident. Therefore, there is no evidence that the legislature intended to prohibit fellow employee exclusion clauses when it enacted the financial responsibility statute.

On the facts of this case, the purpose of the financial responsibility statute has been met. Under the statute, Schwan's was required to, and did, insure the vehicles it owned. Neither Schwan's nor Liberty Mutual was obligated to insure the driver, Finnell. Finnell was required to carry, and did carry, liability insurance meeting the statutory minimums. Therefore, the purpose of the financial responsibility statute was met because the owner and operator of the vehicle in which Davis was injured carried liability insurance which met the statutory minimums.

## D. Prior Legislation

Fellow employees excluded from coverage in business auto liability policies are covered by workers' compensation. Vermont's workers' compensation law is designed to compensate employees injured in the scope of their employment. The law provides in relevant part:

> The rights and remedies granted by the provisions of this chapter to an employee on account of a personal injury for which he is entitled to compensation under the provisions of this chapter shall exclude all other rights and remedies of such employee, his personal representatives, dependents or next of kin, at common law or otherwise on account of such injury.

Vt. Stat. Ann. tit. 21, § 622 (1987 & Supp. 1997).

Vermont's workers' compensation law serves a dual purpose. By making workers' compensation the sole and exclusive remedy for employees injured in the scope of employment the act provides an expeditious remedy for employees without consideration of fault and limits the liability of employers. *See Kittell v. Vermont Weatherboard, Inc.*, 138 Vt. 439, 441, 417 A.2d 926, 927 (1980)(finding that workers' compensation is the sole and exclusive remedy for employees injured in the scope of employment).

As a matter of statutory interpretation, when the legislature enacted the financial responsibility statute it was aware that workers' compensation was the sole and exclusive remedy available for employees injured in the scope of employment. Vermont enacted its first workers' compensation law in 1915. Since that time the state has refined the law through several amendments. There is nothing to suggest that the legislature intended to nullify its workers' compensation law with respect to fellow employees.

### E. Administrative Decisions

■ In Vermont, all insurance policies must be filed with, and approved by, the Department of Banking, Insurance, Securities & Health Care Administration (the "Department"). *See* Vt. Stat. Ann. tit. 8, § 3542 (1984). The Department is required to disapprove any policy if it violates state law. *See* Vt. Stat. Ann. tit. 8, § 3542 (1984); *see also In Re UNUM Life Ins. Co. of America,* 162 Vt. 201, 206, 647 A.2d 708, 711 (1994)(finding that the commissioner is charged with reviewing insurance policies to insure compliance with the law). Specifically, the Department must disapprove any insurance policy that contains or incorporates "any inconsistent, ambiguous, or misleading clauses, or exceptions and conditions which deceptively affect the risk purported to be assumed in the general coverage of the contract." Vt. Stat. Ann. tit. 8, § 3542(2) (1984). Decisions made by an administrative agency are entitled to respect as to matters within its particular area of expertise. *See Consumer Credit Ins. Ass'n. v. State,* 149 Vt. 305, 307, 544 A.2d 1159, 1161 (1988)(giving deference to a statutory interpretation made by a regulatory agency).

In this case there is no evidence that the Department erred in its approval of the fellow employee exclusion. The Department reviewed the language of the auto policy and approved of the inclusion of the fellow employee exclusion clause for business automobile liability insurance policies.

### F. Consequences and Effects

Under Vermont's insurance law the enforcement of a fellow employee exclusion clause will not leave an injured person without a source of compensation. First, a fellow employee injured in the scope of employment will be eligible for workers' compensation benefits. *See* Vt. Stat. Ann. tit. 21, § 601–710 (1987 & Supp.1997). Second, under the dual liability law, an injured fellow employee may also sue the negligent co-worker who caused his injury. *See* Vt. Stat. Ann. tit. 21, § 624 (1987 & Supp.1997). The negligent co-worker should have personal liability insurance because the financial responsibility statute requires it. *See* Vt. Stat. Ann. tit. 23,

§ 800(a) (1987 & Supp.1997). Third, Vermont requires uninsured/underinsured coverage in every auto liability policy in the state, and provides that the amount of coverage "shall not be less than the minimum limits of coverage required under the provisions of section 801 of this title." Vt. Stat. Ann. tit. 23, § 941 (1987). Therefore, even if workers' compensation is unavailable and the third-party is uninsured and impecunious, Vermont's uninsured and underinsured motorist law guarantees there will always be at least as much compensation available to the injured co-employee as the financial responsibility statute requires. *See* Vt. Stat. Ann. tit. 23, § 941 (1987); *see also* Vt. Stat. Ann. tit. 23, § 800(a) (1987 & Supp.1997).

In conclusion, there is no reason to believe that the state legislature intended to prohibit fellow employee exclusions in business auto policies where employees are already covered by workers' compensation. This Court has considered the purpose of the financial responsibility statute, the relevant supreme court decisions, legislation, and administrative decisions. This Court has also examined the effects, the consequences, and the spirit of the law in terms of its purpose. Each part of this Court's analysis supports one conclusion: the enforcement of a fellow employee exclusion will not contravene the Act's purpose which is to ensure that a person injured in an automobile accident has a source of compensation. In short, no Vermonter will go uncompensated because of the enforcement of a fellow employee exclusion. Therefore, for all of the foregoing reasons, Davis's claim against Schwan's and Liberty Mutual for declaratory relief is denied.

### III. Breach of Contract

Count II of Davis's complaint alleges breach of contract against both Schwan's and Liberty Mutual. Davis claims that Schwan's breached its employment agreement by failing to provide the appropriate motor vehicle insurance to Davis and Finnell and that Liberty Mutual breached its insurance agreement by failing to defend and indemnify Finnell and by failing to pay the Agreed–for–Judgment. This Court will consider Davis's claims against Schwan's and Liberty Mutual

separately. Also, for the sake of clarity, this Court distinguishes between the rights asserted by Davis and the rights asserted by Davis in Finnell's place.

### A. Breach of Contract against Schwan's

Under Vermont law, Schwan's had no obligation to provide automobile liability insurance with respect to fellow employees who are already covered by workers' compensation. *See* Vt. Stat. Ann. tit. 21, § 622 (1987 & Supp.1997). Schwan's did have an obligation to, and did in fact, provide liability insurance for its motor vehicles. *See* Vt. Stat. Ann. tit. 23, § 800(a) (1987 & Supp. 1997).

■ Under Vermont law, Schwan's "Salesperson Safety Manual," its "Safety & Work Rules for Employees," and its "Employee Manual" may all be considered as evidence that the "Contract for Employment" was modified by an implied contract. *See Taylor v. Nat'l Life Ins. Co.,* 161 Vt. 457, 464, 652, A.2d 466, 471 (1993)(finding personnel manual provisions inconsistent with at-will relationship may be used as evidence that employment contract requires good cause for termination despite fact that manual was not part of initial employment agreement).

■ It is undisputed that Davis and Finnell had an "Employment Contract" with Schwan's. Even though there is nothing in the "Employment Contract" that obligates Schwan's to provide liability coverage to the operators of its motor vehicles, Davis points to Schwan's personnel publications and representations by his supervisor. He cites the "Salesperson Safety Manual" in which Schwan's says that it strives to provide the safest possible working conditions for all its employees; the "Employee Manual" which says that Schwan's will provide accident insurance to its employees; the posted declarations page of Schwan's insurance policy with Liberty which refers to $2,000,000.00 worth of liability coverage; and finally, statement's made by his supervisor, Stanley Ostrow, that each motor vehicle operator would have liability coverage.

Davis has provided no evidence that Schwan's promised to provide liability insurance to its drivers for fellow employees injured in the scope of employment. There is nothing in Schwan's "Contract for Employment," its "Salesperson Safety Manual," its "Safety & Work Rules for Employees," or its "Employee Manual" which shows that it promised to provide automobile liability insurance to its drivers for fellow employees injured in the scope of employment. Davis's vague recollection of Stanley Ostrow's assurance that he would be covered "both personally and liability ways" if he was involved in an accident is not enough to create a contractual obligation. Exhibit 7, Deposition of Gareld Davis, p. 20, L 19–20. Even if Stanley Ostrow made oral representations that Schwan's would provide liability insurance for its drivers, those oral representations are insufficient to obligate Schwan's under a breach of contract theory.

Therefore, Schwan's fulfilled its insurance obligations and complied with Vermont law. Schwan's purchased a business automobile liability insurance policy from Liberty Mutual. Liberty Mutual's policy complied with the terms and provisions of the financial responsibility statute. In addition, the business automobile policy was approved by the Vermont Department of Banking, Insurance, Securities & Health Care Administration. Therefore, Davis's claim against Schwan's for breach of contract is denied.

### B. Breach of Contract against Liberty Mutual

■ Liberty Mutual's duty to defend is different from its duty to indemnify. An insurance company's duty to defend is determined by comparing the allegations in the underlying claim against the insured to the terms of coverage contained in the policy. *See Cooperative Fire Ins. Ass'n. v. Gray,* 157 Vt. 380, 382, 599 A.2d 360, 361 (1991). If it is required, Vermont courts will examine the known facts on which the underlying claim is based to understand the application of the policy provisions to the facts. *See Garneau v. Curtis & Bedell, Inc.,* 158 Vt. 363, 366, 610 A.2d 132, 133 (1992)(resolving the question of the duty to defend on the language of the policy and the language of the complaint).

The insurer's duty to defend is broader than its duty to indemnify. *See City of Burlington v. Nat'l Union Fire Ins. Co.*, 163 Vt. 124, 127, 655 A.2d 719, 721 (1994)(finding that if a claim is potentially covered by the policy, the insurer has a duty to defend). An insurer has the duty to defend if any claim against the insured potentially comes within the policies coverage. *See Garneau v. Curtis & Bedell, Inc.*, 158 Vt. 363, 366, 610 A.2d 132, 133 (1992). Only if there is no possible factual or legal basis on which the insurer might be obligated to indemnify will there be no duty to defend. *Id.* at 366–7, 610 A.2d at 133. Also, to escape the duty to defend, the burden is on the insurer to show that the claims against it are entirely excluded from coverage. *See City of Burlington v. Glens Falls Ins. Co.*, 133 Vt. 423, 424, 340 A.2d 89, 89 (1975)(finding that exclusionary clauses must be strictly construed). In addition, an insurance policy must be interpreted according to its terms and the evident intent of the parties as expressed in the policy language. *See City of Burlington v. Nat'l Union Fire Ins. Co.*, 163 Vt. 124, 127, 655 A.2d 719, 721 (1994).

It is undisputed that the fellow employee exclusion clause in Liberty Mutual's automobile liability policy applies to the facts of this case. In light of the Court's opinion above, there is no possible factual basis on which Liberty Mutual might have a duty to defend. Nor is there any legal basis on which Liberty Mutual might have a duty to defend. The fellow employee exclusion applies to the facts of this case and, as this Court has already said, it is a valid means to limit liability coverage. Thus, Liberty Mutual did not have a duty to defend Finnell.

With respect to indemnity, Davis bears the burden of proving that his loss is covered by the insurance policy and that Liberty Mutual has a duty to indemnify the insured for the loss. *See State v. Glens Falls Ins. Co.*, 132 Vt. 97, 99, 315 A.2d 257, 258 (1974)(finding that the duty of the insurer to defend is broader than the obligation to respond in damages); *see also Town of Windsor v. Hartford Accident & Indemnity Co.*, 885 F.Supp. 666, 671 (D.Vt.1995)(finding that insured bears the burden of proving that the claimed loss is covered by the policy and that the insurer has a duty to indemnify). On the facts of this case, Davis has proffered no evidence in support of his claim that Liberty Mutual had a duty to indemnify Finnell. In fact, Liberty Mutual's policy excludes the very coverage that Davis seeks. The inescapable conclusion is that Davis's unfortunate loss is not covered by Liberty Mutual's policy and that Liberty did not have a duty to defend nor indemnify Finnell.

## IV. Other Counts

### A. Bad Faith

Count III of Davis's complaint alleges that Liberty Mutual has acted in bad faith. To establish a claim for bad faith in Vermont, Davis must show that (1) the insurance company had no reasonable basis to deny benefits of the policy, and (2) the company knew or recklessly disregarded the fact that no reasonable basis existed for denying the claim. *See Lauzon v. State Farm Mut. Auto. Ins.*, 164 Vt. 620, 621, 674 A.2d 1246, 1247 (1995); *see also Bushey v. Allstate Ins. Co.*, 164 Vt. 399, 402, 670 A.2d 807, 809 (1995). An insurance company may challenge claims that are debatable and will be found liable only where it has intentionally denied a claim without a reasonable basis. *See Bushey v. Allstate Insurance Co.*, 164 Vt. 399, 402, 670 A.2d 807, 809 (1995) (citing *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368, 377 (1978).) Vermont's bad faith rule "limits recovery to instances in which an insurer not only errs in denying coverage but does so unreasonably." *Id.* 164 Vt. at 402, 670 A.2d 807, 670 A.2d at 809. In light of the findings above there is no evidence that Liberty Mutual has acted in bad faith.

As part of Count III, Davis also claims that Liberty Mutual acted in bad faith by asserting a lien against the $20,000.00 in insurance funds that Davis received from Finnell's insurer, New Hampshire Group. Although the specific facts are disputed, we assume, *arguendo*, that Liberty Mutual placed a lien on Davis's recovery from New Hampshire Group. Under Vermont law, workers' compensation governs the settle-

ment procedure. Vermont's workers' compensation law provides, in relevant part:

> Any recovery against the third party for damages resulting from personal injuries . . . shall first reimburse the employer or its workers' compensation insurance carrier for any amounts paid or payable . . . to date of recovery, and the balance shall forthwith be paid to the employee or the employee's dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payment of compensation benefits.

Vt. Stat. Ann. tit. 21, § 624(e) (1987 & Supp. 1997).

 In this case, Davis sued Finnell and recovered $20,000.00 from Finnell's personal automobile liability insurer, New Hampshire Group. Liberty Mutual, Schwan's workers' compensation insurer, has paid more than $80,000.00 in workers' compensation benefits to Davis. Under Vermont's workers' compensation law Liberty Mutual is entitled to be reimbursed for the amount of workers' compensation benefits already paid. *See* Vt. Stat. Ann. tit. 21, § 624(e) (1987 & Supp. 1997). Therefore, Liberty Mutual was acting within the law when it placed a lien on Davis's recovery. In addition, there is no factual basis for Davis's claim that Liberty Mutual acted in bad faith when it placed a lien on his recovery from Finnell.

*B. Gross Misconduct*

Count IV of Davis's complaint alleges that Liberty Mutual exhibited gross misconduct and reckless disregard for Davis's and Finnell's rights. In addition, Davis requests punitive damages of $3,000,000.00. Punitive damages are not appropriate unless the defendant has exhibited gross misconduct or reckless disregard. Here, Davis has proffered no evidence to support his claim that Liberty Mutual exhibited gross misconduct or a reckless disregard. Therefore, punitive damages are not appropriate in this case.

*C. Breach of Covenant of Good Faith and Fair Dealing*

 Count V of Davis's complaint alleges that Liberty Mutual violated the cove-

nant of good faith and fair dealing by refusing to defend and indemnify Finnell and by refusing to provide direct liability coverage to Davis. Under Vermont law there is an implied covenant of good faith and fair dealing in every contract. The duty implies "that neither party shall do anything to injure or destroy the rights of the other party to receive the benefits of the agreement." *Shaw v. E.I. DuPont De Nemours and Co.*, 126 Vt. 206, 209, 226 A.2d 903, 906 (1966)(citing *Kirke La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87, 188 N.E. 163, 167 (1933))(finding that there is an implied covenant of good faith and fair dealing in every contract); *see also Carmichael v. Adirondack Bottled Gas Corp.*, 161 Vt. 200, 208, 635 A.2d 1211, 1216 (1993)(finding that duty exists to ensure that the parties act faithfully to an agreed common purpose and in consistency with the justified expectations of the other party). The burden of showing a breach of the covenant of good faith and fair dealing is on the plaintiff. *See Lambert v. Equinox House, Inc.*, 126 Vt. 229, 231, 227 A.2d 403, 404 (1967)(finding that an employee seeking to recover damages for breach of contract had the burden of proving every element); *see also Burke v. N.P. Clough, Inc.*, 116 Vt. 448, 450, 78 A.2d 483, 486 (1951)(finding that the burden of proof was on the plaintiff).

 Davis has provided no evidence to support his claim that Liberty Mutual violated the covenant of good faith and fair dealing by refusing to defend and indemnify Finnell and by refusing to provide direct liability coverage or full UM coverage to Davis. Therefore, Liberty had no duty to defend and indemnify Finnell or to provide direct liability coverage to Davis.

*CONCLUSION*

Based upon the findings above, Defendants' motions for summary judgment (papers 36, 39) are GRANTED. Plaintiff's motion for summary judgment (paper 45) is DENIED. In light of this ruling, all pending discovery motions are denied as moot.